# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL ACTION NO. 3:20-CR-00016-KDB-DSC

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | **ORDER** |
| **DOMINIQUE SANCHEZ DAVIS,** | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant Dominique Sanchez Davis's *pro se* Motion for Compassionate Release under 18 U.S.C. 3582(c)(1)(a) (Doc. No. 47). Mr. Davis, who pled guilty to possession of a firearm by a convicted felon subsequent to three violent felonies in violation of 18 U.S.C. §§ 922(g)(1), 924(e), asks the Court to vacate the remainder of his sentence following *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). For the reasons discussed below, the Court will **DENY** the motion.

## I. LEGAL STANDARD

By statute, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Nonetheless, Congress has provided a few exceptions to this general rule. One such exception is a motion for compassionate release. Before the passage of the First Step Act, district courts were only permitted to reduce a term of imprisonment on motions for compassionate release made by the Director of the Bureau of Prisons ("BOP"). Now, a court may entertain a motion filed by a defendant. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, now provides in pertinent part:

> (c) Modification of an imposed term of imprisonment.—The Court may not modify a term of imprisonment once it has been imposed except that—

1

> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction
> ...
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ....

18 U.S.C. § 3582(c).

"In analyzing a motion for compassionate release, district courts must determine: (1) whether extraordinary and compelling reasons warrant such a reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582. Only after this analysis may the district court grant the motion if (3) the relevant 18 U.S.C. § 3553(a) factors, to the extent they are applicable, favor release." *United States v. Malone*, 57 F. 4th 167, 173 (4th Cir. 2023) (internal citation omitted) "Thus, even if a movant satisfies the threshold eligibility requirement for obtaining relief, a district court has discretion to grant or deny relief based on its assessment of the salient § 3553(a) factors." *United States v. Bethea*, 54 F. 4th 826, 831 (4th Cir. 2022).

On November 1, 2023, the Sentencing Commission's proposed amendment to § 1B1.13 came into effect. *See* Amendments to the Sentencing Guidelines, U.S.S.C., 8-11 https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf (last accessed Nov. 2, 2023). The new policy statement largely

2

Case 3:20-cr-00016-KDB-DSC   Document 48   Filed 11/07/23   Page 2 of 8

preserves the discretion district courts held to consider any extraordinary and compelling reason for release. *See* USSG § 1B1.13; *see also United States v. McCoy*, 981 F. 3d 271, 282 (4th Cir. 2020). Among such reasons, the statement advises District courts to consider the medical circumstances of the defendant, the age of the defendant, family circumstances, whether the defendant is or has been a victim of abuse, or served an unusually long sentence. §§ 1B1.13(b)(1)-(4), (6). The new Guideline also states that district courts may consider any other set of circumstances which rises to the level of gravity of the factors enumerated in the Guideline. §1B1.13(b)(5). However, relevant to Mr. Davis's case, § 1B1.13(c) now states that "a change in the law … shall not be considered for purpose of determining whether an extraordinary and compelling reason exists under this policy statement."[1]

The Sentencing Commission's new policy statement does not relieve the Court of its obligation to analyze the § 3553(a) factors. Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with ... training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

## II. DISCUSSION

Mr. Davis contends that the Court should vacate the rest of his sentence following the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Pursuant to the amended Guideline, Mr. Davis's failure to plead an extraordinary and

---

[1] Section § 1B1.13(c) advises district courts to consider a change in the law for the purposes of determining the extent of a sentence reduction if a defendant "otherwise establishes that extraordinary compelling reasons warrant a sentence reduction…" Here, Mr. Davis has not provided any other grounds for his release other than a change in the law.

3

compelling reason other than a change in the law means the Court will deny his motion for compassionate release. Moreover, the Court also finds that if it were to review Mr. Davis's motion under the prior compassionate release standard, his motion would still be denied because there has been no substantive change in the law as applied to Mr. Davis. *See Concepion v. United States*, 142 S. Ct. 2389, 2404 (2022) (allowing district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act.). Lastly, the Court finds that the § 3553(a) factors do not warrant compassionate release.

    **A.**    ***Bruen* Does Not Change the Law as Applied to Mr. Davis**

In *Bruen*, the Supreme Court articulated the following standard for considering Second Amendment claims: (1) when the plain text of the Second Amendment covers an individual's conduct, that conduct is presumptively protected; and, if the conduct is presumptively protected, (2) the government must then justify its regulation by demonstrating that it is "consistent with the Nation's historical tradition of firearm regulation...." *Bruen*, 142 S. Ct. at 2129-30.

    1.    <u>The Second Amendment Does Not Cover Mr. Davis and his Conduct</u>

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. The question, then, is whether Petitioner is part of "the people" to whom the Second Amendment applies. The Supreme Court suggests, and several other courts have concluded, that "the people" is limited to individuals within the political community, and excludes felons. *See Bruen*, 142 S. Ct. at 2134 ("It is undisputed that petitioners ... –two ordinary law-abiding, adult citizens – are part of 'the people' to whom the Second Amendment applies"); *see, e.g., United States v. Hughes*, No. 2:22-cr-00640-DCN-1, 2023 WL 4205226, at *7 (D.S.C. June 27, 2023) (noting that "[t]he consensus indicates that the first prong of *Bruen* as applied to

4

§ 922(g)(1) shows that the statute is constitutional – meaning, felons are excluded from 'the people' under the plain text of the Second Amendment"); *United States v. Riley*, 635 F. Supp. 3d 411, 424-25 (E.D. Va. 2022) ("the people" refers to individuals considered to be part of the political community, including those with the power to vote, and excludes those convicted of a crime); *United States v. Ingram*, 623 F. Supp. 3d 660, 664 (D.S.C. Aug. 25, 2022) ("By distinguishing non-law-abiding citizens from law-abiding ones, the dicta in *Heller* and *McDonald* clarifies the bounds of the plain text of the Second Amendment"); *see also Hamilton v. Pallozzi*, 848 F.3d 614, 626 (4th Cir. 2017) (holding that "conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment," absent narrow exceptions). Accordingly, Mr. Davis, who has previously been convicted for several violent felonies, is not part of "the people" protected by the Second Amendment.

Moreover, it does not appear that the plain text of the Second Amendment covers Mr. Davis's conduct. The Supreme Court has recognized that the Second and Fourteenth Amendments protect the rights of ordinary, law-abiding citizens to possess a handgun in their home, and publicly, for self-defense. *See District of Columbia v. Heller*, 554 U.S. 570, 636 (2008) (right to possess a handgun inside the home for self-defense); *Bruen*, 142 S. Ct. at 2122 (right to carry handguns publicly for self-defense). In the instant Motion, Mr. Davis makes no statement about why he carried the gun. (*See* Doc. No. 47). However, at the time of his arrest, Mr. Davis was carrying a stolen FN Herstal Model 509 9mm with an extended magazine and a search of the car in which he was riding revealed a digital scale with white residue on it in the center consol. (*See* Doc. No. 21, at 4). Such is not the conduct of "law-abiding citizens with ordinary self-defense needs…" *Bruen*, 142 S. Ct. at 2151. Accordingly, Mr. Davis and his conduct are not covered by the plain text of the Second Amendment.

### 2. The Law Conforms with the Nation's Historical Tradition of Firearm Regulation

Even assuming *arguendo* that Petitioner is protected by the Second Amendment, the Government has justified the regulation in § 922(g)(1) because it is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2135. The Supreme Court has long recognized that Second Amendment's protection "is not unlimited." *Heller*, 554 U.S. at 619. The Second Amendment protects the "law-abiding, responsible" person's possession of arms as discussed *supra*. *Id.* at 635; *see McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 764 (2010) (the Second Amendment protects "a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home"). There is a longstanding history and tradition in the United States of restricting access to firearms by individuals who are deemed to be uncommonly dangerous. *See generally* Federal Firearms Act of 1938 Pub. L. No. 75-785, §§ 1(6), 2(f), 52 Stat. 1250, 1250-51 (1938) (prohibiting violent felons from possessing firearms); Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249, 262 (2020) (noting that "Americans continued some English arms traditions, including the tradition of disarming those perceived as dangerous;" although the colonial laws were sometimes discriminatory and overbroad, they were intended to prevent danger); see also Diarmuid F. O'Scannlain, *Glorious Revolution to American Revolution: The English Origin of the Right to Keep and Bear Arms*, 95 Notre Dame L. Rev. 397, 405 (2019) (noting that the history of laws used to "disarm dangerous and disaffected persons" reaches back to pre-colonial English history). The Supreme Court noted in *Heller* that:

> From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century

> courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 626-627.

At the time Petitioner committed the instant § 922(g)(1) offense, he had prior violent felony convictions including second degree kidnapping, first degree rape, robbery with a dangerous weapon, and assault with a deadly weapon with intent to kill, all in violation of North Carolina law. Petitioner's felony convictions unquestionably place him among the group of uncommonly dangerous individuals whom the United States has historically restricted from possessing firearms.[2] *See Bruen*, 142 S. Ct. at 2133 (historical tradition requires only that the government identify a well-established and representative historical analogue, not a historical twin); *see, e.g., United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) (on direct appeal, denying an as-applied challenge by defendant who had non-violent drug offense convictions); *see also United States v.*

---

[2] Mr. Davis asks the Court to adopt the reasoning in *Range v. Attorney General*, 69 F.4th 96 (3rd Cir. 2023). In *Range*, the Third Circuit Court of Appeals found that 18 U.S.C. 922(g)(1) was unconstitutional as applied to Range because the Government failed to show that the United States "has a longstanding history and tradition of depriving people like Range of their firearms." *Id.* at 106. Range had pled guilty approximately 25 years prior to one count of making a false statement to obtain food stamps in violation of Pennsylvania law. *Id.* at 98. He filed suit seeking declaratory judgment that § 922(g)(1) was unconstitutional as applied to him and asserted that he wanted to purchase a firearm to hunt and for self-defense purposes. *Id.* at 99. In the instant case, Mr. Davis has multiple violent felony convictions, some involving the use of a deadly weapon. Moreover, he does not seek declaratory judgment so that he may buy a firearm to hunt or for self-defense. Instead, he was found in possession of a stolen weapon while traveling in a vehicle containing drug paraphernalia. Therefore, given his very different circumstances, the Court declines Mr. Davis's request to analogize his case to *Range*.

*Rahimi*, 61 F.4th 443 (5th Cir. 2023) (distinguishing convicted felons or individuals otherwise subject to another longstanding prohibition on the possession of firearms, from the prohibitions on the possession of firearms by a person subject to a domestic violence restraining order which violates the Second Amendment); *cf. Range v. Att'y Gen. U.S.*, 69 F.4th 96 (3d Cir. 2023) (in a declaratory action filed by a gun purchaser against the government, concluding that § 922(g)(1) is unconstitutional as applied to purchaser who was previously convicted of making false statements to obtain food stamps, a felony-equivalent under Pennsylvania law). Therefore, applying the *Bruen* test, Mr. Davis's § 922(g)(1) conviction is valid because prohibiting a felon such as Petitioner from possessing a firearm is consistent with the nation's historical tradition.

B.  Section 3553 Factors

In his Motion, Mr. Davis does not provide any argument as to why this Court should find that his circumstances or find that his efforts at rehabilitation outweigh the other Section 3553(a) factors and the danger he poses to society. (*See* Doc. No. 47). The nature and circumstances of Mr. Davis's offense, his history and characteristics, the need for deterrence, the need to protect the public, and the need for just punishment also weigh against any sentence reduction for Mr. Davis.

**IT IS, THEREFORE, ORDERED**, that the Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. No. 47), is **DENIED.**

  SO ORDERED.

Signed: November 6, 2023

Kenneth D. Bell
United States District Judge